UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JANET WYNN SNYDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:12-cv-000002 |
| ) | (Phillips/Shirley) |
| PNC BANK, NA, a principal subsidiary of ) | |
| PNC FINANCIAL SERVICES GROUP, INC., ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM AND ORDER

**I.    Introduction**

This matter is before the Court on the Defendant's Motion to Dismiss. [Doc. 6 ]. The Plaintiff, Janet Wynn Snyder, filed suit against the Defendant, PNC Bank, a subsidiary of PNC Financial Services Group, Inc. ("PNC"), alleging violations of the Fair Credit Reporting Act ("FCRA"), common law breach of contract, and fraud. The original Complaint [Doc. 1] contained an additional claim against PNC for defamation, but the defamation claim is not contained in the Amended Complaint and has been abandoned by the Plaintiff. [Doc. 11]. The Plaintiff seeks compensatory damages in the amount of $1, 574, 899 and punitive damages of $75,000. PNC has moved to dismiss this action for failure to state a claim under Rule 12(b)(6).

The Defendant argues that the Plaintiff's contract claims are barred by the Tennessee Statute of Frauds and that the Plaintiff's fraud claim should be dismissed for failure to show detrimental reliance. [Doc.12]. PNC concedes that the Amended Complaint has properly stated a claim under the FCRA For the reasons that will follow, the Defendants' Motion to Dismiss [Doc. 8] will be **DENIED.**

1

## II. Jurisdiction

The Court notes that it has jurisdiction over this action pursuant to 28 U.S.C. § 1331 as the Plaintiff asserts that the Defendant violated the Fair Credit Reporting Act. The Court has supplemental jurisdiction over the Plaintiff's state law breach of contract and fraud claims pursuant to 28 U.S.C. §1367 as they arise from the same transaction and occurrence as the federal claim.

## III. Statement of Facts

For the purposes of the present Motion, the following facts have been taken from the Amended Complaint [Doc. 11].

The Plaintiff held a credit and checking account with the Defendant bank. [Doc. 11 at ¶ 7]. In 2009, the Plaintiff maintained an outstanding credit card balance of $9,81220. *Id.* at ¶ 9. The Plaintiff received several calls from PNC regarding the outstanding account balance. *Id.* at ¶ 10. The representatives that contacted the Plaintiff refused to give their names or permit the Plaintiff to speak with a manager. *Id.* Eventually, the Plaintiff was able to execute an oral agreement to repay PNC in the amount of $202.00 per month at a four-percent interest rate. *Id.* at ¶11-12. The amount was later reduced to $180.00 per month, again, via verbal agreement, and PNC was given permission to debit the funds from the Plaintiff's Bank account on the Friday following the second Wednesday of each month. *Id.*

PNC sent letters to the Plaintiff reminding her of the monthly payments; the Plaintiff attached one such letter to the Complaint. *Id.* On eight separate occasions, PNC debited the Plaintiff's account on dates different than those verbally agreed to, causing the Plaintiff's checking account to become overdrawn. *Id.* at ¶ 13. As a result of the insufficient balance, PNC

charged the Plaintiff with overdraft fees. *Id.* Additionally, PNC began charging the Plaintiff at an interest rate of 12% instead of the agreed upon rate of 4%. *Id. at* ¶ 14. During this time, the Plaintiff received "numerous daily harassing phone calls…about the amounts due on the account." Despite the fact that "the Plaintiff was not late in making payment when she received theses calls, and did not understand what was happening until she saw the large bookkeeping errors that the Defendant had made on her account with double billing and [the] other practices refered to in this Complaint." *Id. at* ¶ 15. As a result of the telephone calls, the Plaintiff began suffering from "mental and emotional distress and anguish." *Id.*

The Plaintiff further alleges that the Defendant "failed to credit her for some [$2,932.00] in payments for 2009. *Id. at* ¶ 17. The Plaintiff ceased making payments to the account in order to garner the attention of a higher bank official. *Id. at* ¶ 18. The Plaintiff wrote a letter to the President of PNC, and she was eventually contacted by the head of the collections department, Ken Magerman; she informed him of her intent to satisfy the debt *Id.* From 2009 to 2011, she held conversations with PNC wherein she disputed the amount of her debt. *Id. at* ¶ 19. Then, "without any notice to her, [PNC] charged-off her account and reported this charge to three national credit bureaus," allegedly in violation of the FCRA. *Id. at* ¶ 19-20. The Plaintiff is presently suing for breach of contract, fraud and violations of the FCRA 15 U.S.C. §1681.

IV.    Analysis

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). When considering a Rule 12(b)(6) motion, a court must treat all of the well-pleaded allegations of the

complaint as true and construe all of the allegations in the light most favorable to the non-moving party. *DIRECTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). However, the Court "need not accept as true legal conclusions or unwarranted factual inferences, and [c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009). To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim.

Typically, matters outside the pleadings may not be considered in ruling on a Rule 12(b)(6) motion unless the motion is converted to a motion for summary judgment. *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). However, a court may consider any documents attached to a motion to dismiss to be part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Id.* at 89. In this case, the Court will consider only the Amended Complaint and the attached documents [Doc. 11], the Motion to Dismiss [Doc. 6], the Response in Opposition to the Defendants' Motion to Dismiss [Doc. 9], and the Defendants' Reply to the Response in Opposition [Doc. 12] without converting this Motion to Dismiss into a Motion for Summary Judgment.

### a. Statute of Frauds

The Statute of Frauds requires that parties memorialize certain types of contracts in writing for the contract to be enforceable. The Tennessee Statute of Frauds holds that:

> (b)(1) No action shall be brought against a lender or creditor upon any promise of commitment to lend money or to extend credit, or upon any promise or commitment to alter, amend, renew, extend or otherwise modify or supplement any written promise, agreement or commitment to lend money or extend credit, unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall

4

> be in writing and signed by the lender or creditor, or some other person lawfully authorized by such lender or creditor.

Tenn. Code. Ann. §29-2-101(b)(1) (1980). The Statute of Frauds also holds that,

> (a) No action shall be brought: (5) Upon any agreement or contract which is not to be performed within the space of one (1) year from the making of the agreement or contract; unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party. . . .

The most commonly recognized exception to the Statute of Frauds is the doctrine of part performance. Under the doctrine of part performance, an otherwise unenforceable oral contract can be the basis of an action if one of the parties has performed pursuant to the contract. *See Sweeney v. Tenney,* 2011 Tenn. App. LEXIS 530 (Tenn. Ct. App. Sept. 29, 2011)(writing that "Tennessee courts have recognized a part performance exception to the Statute of Frauds, which is applicable to oral contracts other than for the sale of land); *See also, Tre v. Ogle,* 767 S.W.2d 622, 664 (Tenn. Ct. App. 1989 (finding that, "The Plaintiff must be able to show such acts and conduct of the [Defendants] as the court would hold to amount to a representation that [they] proposed to stand by [their] agreement and not avail [themselves] of the statute to escape its performance; and also that the Plaintiff, in reliance on this representation, has proceeded, either in performance or pursuance of his contract, so far to alter his position as to incur an unjust and unconscious injury and loss, in case the Defendants are permitted after all to rely upon the statutory defense.")(citing, *Buice v. Scruggs Equipment Co.,* 194 Tenn. 129, 250 S.W.2d 44, 48 (1952)).

      PNC appears to acknowledge that the part performance exception to the Statute of Frauds would apply if the Plaintiff would have fully completed her payments; however, the Defendant argues that, by the Plaintiff's Admission, "PNC immediately began breaching the alleged oral

5

contract." [Doc. 8 at 7]. The Defendant further acknowledges that "a reasonable interpretation [of the oral contract] shows that the Plaintiff intended to make the monthly payment required thereunder because of her 'dire financial situation...' *Id.* Fundamentally, the Defendant's argument is that the partial performance exception to the Statute of Frauds should not apply in this case because PNC reneged on its alleged promise relatively swiftly. In other words, PNC's alleged untimely withdrawals from the Plaintiff's checking account prevented her from performing her obligations under the contract, thereby subjecting the prior oral agreement to the Statute of Frauds because she would no longer be able to partially perform.

Two significant questions emerge, that is, (1) to what extent the Plaintiff attempted to fulfill her debt obligations pursuant to the oral agreement; and, (2) to what extent did the Defendant renege on its promise to allow her to do so at a rate of $180.00 per month at an interest rate of 4%. For the purposes of a Motion to Dismiss, the Plaintiff need only state a claim upon which relief could be granted. Here, the Court finds compelling the ruling of the Tennessee Supreme Court in the above-cited decision *Buice v. Scruggs Equipment Co.* 194 Tenn. 129. The court in *Buice* held that "[The] doctrine of partial performance to take the verbal contract out of the operation of the Statue of Frauds is purely an equitable doctrine and is a judicial interpretation of the acts of the parties to prevent frauds." *Id.* at 137. The court continues, that the "[Defendant] having accepted [the] benefit and acted in pursuance thereto [cannot] now say that the contract was void."

Similarly, the Court finds the letter to Ms. Snyder from PNC instructive—attached to the Amended Complaint as "Exhibit A." Accepting the facts in the light most favorable to the Plaintiff, it would appear that both PNC and Ms. Snyder operated, for a time, under the perception that she would be paying PNC $180.00 monthly. Furthermore, under the allegations
6

contained within the Amended Complaint, Ms. Snyder began performing under the contract pursuant to her understanding of that agreement, and PNC sent letters to Ms. Snyder citing said agreement. *See supra* part III.

Ms. Snyder admits that she could not complete her portion of the agreement due to insufficient funds in her checking account, but, she alleges, her breach was due to the allegedly fraudulent activities of PNC—which is the underlying nature of this action. Undoubtedly, one of the most fundamental maxims underpinning law is that one ought not be permitted to profit from their own wrongs. *See Rigs v. Palmer,* 115 N.Y. 506, 511 (N.Y. 1889) (finding that "contracts may be controlled in their operation and effect by general, fundamental maxims of the common law. No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own inequity, or to acquire property by his own crime. These maxims are dictated by public policy, have their foundation in universal law administered in all civilized countries, and have nowhere been superseded by statutes; *see also New York Mutual Life Insurance Company v. Armstrong,* 117 U.S. 591, 600 (U.S. 1886) (holding that "It would be a reproach to the jurisprudence of the country if one could recover insurance money payable to the death of a party whose life he had feloniously taken. As well might he recover insurance money upon a building that he had willfully fired.")

There are also modern-day decisions that reemphasize this fundamental principal of law. *See Vana v. Mallinckrodt Medical,* 1995 U.S. App. LEXIS 35488 (6th Cir. 1995) (discussing instances in which a defendant engages in fraudulent behavior in order to prevent the plaintiff from filing an action prior to the expiration of the applicable statute of limitations "a defendant should not be permitted to escape liability by engaging in misconduct that prevents the plaintiff from filing his or her claim on time." The Court of Appeals continues, "No man my take

7

advantage of his own wrong….This principle has been applied in many diverse classes of cases by both law and equity courts and has frequently been employed to bar reliance on statutes of limitations.")(internal citations omitted); *see also, Simon & Schuster, Inc. v Members of N.Y. State Crime Victims Bd.*, 502 US 105, 119, (U.S. 1991); *Campbell v. Thomas, 73 A.D.3d 103* (N.Y. App. Dic. 2d Dep't 210)(writing that This "fundamental equitable principle" has been invoked to deny an individual who murders a family member the right to inherit from the victim of the murder,[1] the right to succeed to the survivorship interest he would have otherwise had as a joint tenant of the victim,[2] and the right to an elective share of the victim's estate.[3] The rule, however, is not limited to murderers, and has been employed under a variety of circumstances, for example, to prevent a party from enforcing an illegal contract,[4] to preclude recovery in tort by a plaintiff whose injuries directly resulted from his or her serious violation of the law,[5] to deny a wife's request to redate a judgment of divorce terminating her husband's prior marriage where the wife knew that her own marriage to the husband was bigamous,[6] and to find that a landowner's commencement of construction of a shopping center did not create a vested right to the issuance of building permits, where the landowner knowingly performed the work in violation of a restrictive covenant.[7]

Accepting the Plaintiff's version of the facts as true, the Plaintiff was attempting to fulfill her financial obligations to PNC pursuant to the negotiated terms of the oral agreement. The breach, if she did in fact breach, was no fault of her own but initiated by allegedly surreptitious behavior on behalf of the Defendant. More specifically, the Plaintiff alleges that PNC withdrew

---

[1] *Riggs v Palmer*, 115 NY at 513.
[2] *Matter of Covert*, 97 NY2d 68, 74, 761 NE2d 571, 735 NYS2d 879 (2001).
[3] *Lonergan's Estate*, 63 NYS2d 307, 308 (1946).
[4] *Stone v Freeman*, 298 NY 268, 82 NE2d 571 (1948).
[5] *Manning v Brown*, 91 NY2d 116, 689 NE2d 1382, 667 NYS2d 336 (1997).
[6] *Martin v Martin*, 205 AD2d 506, 614 NYS2d 281 (1994).
[7] *Matter of G. M. Land Corp. v Foley*, 20 AD2d 645, 246 NYS2d 338 (1964).

8

funds from her account on occasions distinct from those negotiated to in the contract. Consequently, the Court finds that the oral agreement between the parties is not barred by the Statue of Frauds due to the Plaintiff's part performance of, and reliance upon, said agreement. PNC's letter to the Plaintiff serves to provide the foundations for a plausible claim that acknowledges the existence of an agreement, and the Plaintiff's detrimental reliance thereupon, which, in turn, established an oral contract the part performance of which provides an exception to the Statute of Frauds.

Consequently, the Plaintiff has stated a plausible claim upon which relief could be granted and to dismiss this action at the present stage would be inappropriate.

**V.     Conclusion**

For the aforementioned reasons, the Defendant's Motion to Dismiss [Doc. 6] shall be **DENIED,** and this matter will proceed on the Plaintiff's claims.

       **IT IS SO ORDERED**.

                                **ENTER:**

                                  s/ Thomas W. Phillips
                                United States District Judge